Yongyuan "Henry" Li (CA SBN #348954)
YK Law LLP
445 S Figueroa St, Ste 2280
Los Angeles, CA 90071
(213) 401-0970
hli@yklaw.us

*Attorney for Plaintiff*
DANA SOFT PTY LTD

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANA SOFT PTY LTD, an Australian company, )<br><br>*Plaintiff*, )<br>v. )<br><br>META PLATFORMS, INC., a Delaware )<br>Corporation; and DOES 1-10, inclusive, )<br><br>*Defendants*. )<br>)<br>)<br>)<br>) | Case No.: 3:25-cv-3821<br><br>**DEMAND FOR JURY TRIAL**<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. **Breach of Contract**<br>2. **Breach of Implied Covenant of Good Faith and Fair Dealing** |

**COMES NOW**, Plaintiff DANA SOFT PTY LTD ("Plaintiff" or "DANA") against Defendant Meta Platforms, Inc. ("Defendant" or "Meta") (collectively the "Parties") and DOES 1-10 and alleges as follows:

## THE PARTIES

1.      Plaintiff is an Australian limited liability company with its principal place of business located at 4 ZENITH AVE WILLIAMS LANDING VICTORIA AUSTRALIA.

- 1 -
SECOND AMENDED COMPLAINT

2. Upon information and belief, Defendant is a corporation formed under the laws of the State of Delaware with its principal address located at 1 META WAY, MENLO PARK, CA 94025.

3. Plaintiff is ignorant as to the true names and capacities of the defendants sued herein as DOES 1-10 and, therefore, sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities if/when ascertained.

4. Plaintiff alleges that each of these fictitiously-named defendants is responsible, in some manner, for the acts or omissions alleged herein, and that Plaintiff's damages alleged herein were proximately caused by these acts and omissions.

5. Plaintiff alleges that at all material times officers, directors, agents, and employees who are named as defendants acted in such capacities in connection with the acts, practices, and schemes of the business, as set forth below.

6. In this Complaint, whenever any allegation is made against a corporate entity defendant, the allegation refers to acts or omissions of its managers, officers, directors, agents, or employees while engaged in the management, direction, or control of such corporate entity defendant(s), and while acting within the course and scope of their employment and authority.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. For purposes of diversity jurisdiction, Plaintiff Dana Soft Pty Ltd has a single member, who is an individual citizen of the People's Republic of China.

8. Venue is proper in this Court pursuant to the express terms of the agreement between the Parties. Specifically, Section 4.4 of the Meta Terms of Service provides that:

SECOND AMENDED COMPLAINT

"You and Meta each agree that any claim, cause of action, or dispute between us that arises out of or relates to these Terms or your access or use of the Meta Products shall be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, cause of action, or dispute without regard to conflict of law provisions."

9.      A true and correct copy of the Meta Terms of Service, as publicly available at https://mbasic.facebook.com/legal/terms/plain_text_terms/, and accessed by Plaintiff on September 10, 2025, is attached hereto as **Exhibit A**.

**GENERAL ALLEGATIONS**

**A. Meta's Audience Network.**

10.      Meta operates the Audience Network, a monetization platform that allows third-party publishers and developers to display in-app advertisements sourced from Meta. These ads, often tailored through Meta's extensive user data, generate revenue each time a user views or clicks on them. Meta, in turn, shares a portion of this advertising revenue with publishers.

**B. The AN Terms and AN Policy**

11.      Participation in the Meta Audience Network requires publishers to agree to the Meta Audience Network Terms (the "AN Terms"). (Ex. B, Preamble.) A true and correct copy of the AN Terms, as publicly available at https://www.facebook.com/ads/manage/audience_network/publisher_tos/,  and accessed by Plaintiff on September 10, 2025, is attached hereto as **Exhibit B**.

12.      Section 3(3) of the AN Terms provides that "Publisher will comply with Meta's Audience Network Policy ("Audience Network Policy")." In the AN Terms, this language includes

SECOND AMENDED COMPLAINT

a hyperlink that directs the user to the full text of the Meta Audience Network Policy ("AN Policy"). A true and correct copy of the AN Policy, as publicly available at https://developers.facebook.com/docs/audience-network/optimization/best-practices/an-policy, and accessed by Plaintiff on September 10, 2025, is attached hereto as Exhibit C.

**C. DANA's Participation, Performance, and Meta's Withholding of Payments**

13.     DANA is an Australian company engaged in the development of Android mobile applications.

14.     In or around April 2023,  DANA enrolled in the Meta Audience Network program and agreed to the AN Terms.

15.     Pursuant to this agreement, DANA integrated both Meta and third-party advertisements ("Ads," as defined in the AN Terms) into its various mobile application platforms.

16.     DANA fully complied with the AN Terms and AN Policy and generated advertising revenue through the Audience Network. For several months, Meta made regular payments to DANA in accordance with the AN Terms, confirming that DANA was performing as required.

17.     In or around August 2023, despite DANA's continued full performance under the AN Terms, and notwithstanding that DANA had marketed and operated its applications in the same manner as it had in prior months without any material or significant changes, DANA received notifications from Meta indicating that several of DANA's applications had been blocked due to alleged policy violations. Around the same time, Meta restricted DANA's payment account and withheld all accrued advertising revenue for July 2023.

18.     Meta provided no explanation of the alleged violations, nor did it provide any accounting or count of the alleged violations.

19.     DANA nevertheless submitted multiple appeals, but each was summarily rejected, without any substantive review or meaningful explanation. Upon reviewing the experiences

- 4 -

SECOND AMENDED COMPLAINT

publicly posted online by many other developers, DANA learned that Meta's conduct in this case is consistent with a broader pattern: Meta routinely withholds accrued publisher revenue without explanation and without identifying the nature, number, or scope of the alleged violations.

20.    The total amount of withheld revenue exceeds $395,000.

21.    On information and belief, despite Meta's use of the term "withheld," these funds are not held in escrow or otherwise segregated, but instead are retained by Meta in effect as a penalty. On further information and belief, advertisers whose ad spend is implicated are refunded, if at all, only for impressions or clicks that Meta unilaterally designates as invalid or fraudulent, and such refunds are frequently issued in the form of advertising credits rather than cash. By contrast, DANA was deprived of the full amount of accrued revenue, without any distinction between valid and allegedly invalid activity, thereby allowing Meta to financially benefit from its practice of withholding publisher payments.

### FIRST CAUSE OF ACTION
### [Breach of Contract]

22.    Plaintiff realleges and incorporates all previous paragraphs as though fully stated herein.

23.    DANA and Meta entered into a contract through the AN Terms regarding its participation in Meta's Audience Network program. Except for certain terms alleged to be invalid and unenforceable, the contract is valid.

**A. Meta has breached the parties' contract, entitling Plaintiff to damages for its performance thereunder.**

24.    Under the AN Terms, DANA agreed to display Ads supplied by Meta or third-party within its mobile applications and was to receive revenue based on advertisement performance metrics. (Ex. B, ¶¶ 1, 3, 4.)

- 5 -
SECOND AMENDED COMPLAINT

25. Section 4(1) of the AN Terms provides that "[A]pproximately 21 days following the end of the calendar month in which the transaction occurred, Meta will pay Publisher the amounts associated with such calendar month." This provision created an express obligation for Meta to remit timely payment of accrued advertising revenue.

26. DANA fully performed its obligations under the AN Terms, adhering to all of Meta's terms and applicable policies.

27. Meta materially breached the agreement by restricting DANA's payment account and withholding the accrued advertising revenue that had been generated through the Meta Audience Network for July 2023, despite DANA's full performance and compliance with the AN Terms.

28. Section 4(2) of the AN Terms states that "Meta will not be liable for any payment (a) based on such fraudulent activity or invalid activity, as determined by Meta in its discretion, or (b) in the event of any breach by Publisher … during any applicable pay period." and reserves the right to withhold payment or charge back pending investigation. (Ex. B ¶ 4(2).) While this provision purports to authorize Meta to deny payment for amounts determined to be based on fraudulent activity or invalid activity or associated with a breach, nothing in the AN Terms permits Meta to withhold *all* payments in their entirety without distinguishing between valid and allegedly invalid activity.

29. Meta nevertheless applied a blanket and systematic policy of withholding 100% of DANA's accrued revenue, without any differentiation, individualized assessment, or genuine exercise of contractual discretion. Even if a portion of Ads were deemed non-compliant in Meta's view, the contract did not authorize Meta to withhold the entirety of earned revenue, particularly where Meta retained the ability to segregate allegedly invalid activity from compliant activity.

30. By withholding all accrued advertising revenue without contractual authority, Meta materially breached its express obligation to remit monthly payments to DANA.

SECOND AMENDED COMPLAINT

31.    As a direct and proximate result of Meta's breach, DANA has suffered damages in an amount of at least $395,000, and additional amounts to be proven at trial.

32.    Meta's breach was a substantial factor in causing harm to DANA.

**B. The AN Terms and AN Policy contain unconscionable terms that are unenforceable.**

33.    The contractual provisions that Meta purports to rely on as authorizing it to withhold all funds owed to publishers upon account termination—including AN Terms Section 4(2) and provisions of the AN Policy (Ex. B at 2; Ex. C at 1 (Introduction, ¶¶ 3, 5, 6))—are unconscionable under California law and therefore unenforceable. Cal. Civ. Code § 1670.5(a).

34.    These terms were contained in contracts of adhesion, drafted exclusively by Meta and presented to small entities and individuals such as DANA on a non-negotiable, take-it-or-leave-it basis. Publishers, including DANA, had no bargaining power, no ability to negotiate, and no meaningful choice but to accept the terms in order to participate in the Audience Network. Accordingly, the identified terms are procedurally unconscionable.

35.    The provisions are also substantively unconscionable because they are unduly harsh and one-sided. Meta interprets and applies them to withhold 100% of accrued revenues—however limited in scope or time the alleged violation may have been—even where the funds are earned through valid activity. Such terms are overly oppressive and effectively strip publishers of the core benefit of the agreement while leaving Meta with complete discretion to deny payment. Moreover, Meta withholds these funds not for the purpose of compensating advertisers or other publishers, but solely for its own financial gain. Such terms operate exclusively to Meta's advantage, and impose a disproportionate and oppressive burden on publishers. Therefore, the identified terms are substantively unconscionable.

36.    Because the challenged terms are both procedurally and substantively unconscionable, they are unenforceable.

**C. The parties' contracts contain invalid and unenforceable liquidated damages provisions.**

37.    Additionally, the AN Terms contain unreasonable provisions for liquidated damages that are invalid and unenforceable. Cal. Civ. Code § 1671(b).

38.    Section 4(2) of the AN Terms provides that "Meta will not be liable for any payment (a) based on such fraudulent activity or invalid activity, as determined by Meta in its discretion, or (b) in the event of any breach by Publisher of these Audience Network Terms (including the Audience Network Policy) during any applicable pay period" and reserves the right to withhold payment or charge back pending investigation. (Ex. B ¶ 4(2).) In practice, when Meta disables a publisher's account, such as DANA's, it withholds all unpaid funds then accrued in the publisher's account.

39.    These provisions constitute liquidated damages and are invalid and unenforceable because they operate as penalties rather than as a reasonable pre-estimate of damages. They are not reasonably related to any actual damages Meta could suffer as a result of an alleged breach. Instead, Meta imposes a blanket forfeiture of 100% of accrued earnings, regardless of the scope or severity of the alleged violation, and without regard to whether the publisher's prior ads serves were valid and fully performed.

40.    In short, Meta's liquidated damages provisions were unreasonable under the circumstances existing at the time the contract was made, rendering them invalid and unenforceable.

**D. When the unenforceable provisions are stricken from the contract, plaintiffs are left with recoverable damages for their performance under the contracts.**

41.    DANA fully performed its obligations under the AN Terms.

42.    With the unconscionable and invalid provisions stricken, DANA is entitled to recover the advertising revenues it earned.

<u>**SECOND CAUSE OF ACTION**</u>

- 8 -

SECOND AMENDED COMPLAINT

**[Breach of Implied Covenant of Good Faith and Fair Dealing]**

43.     Plaintiff realleges and incorporates all previous paragraphs as though fully stated herein.

44.     The Parties entered into an agreement under which DANA would display advertisements and, in return, receive payment based on advertising activity. Except for terms alleged to be unconscionable and unenforceable, the Parties' contract is valid.

45.     The agreement included an implied covenant of good faith and fair dealing.

46.     DANA fully performed its contractual obligations and complied with Meta's policies.

47.     The Payment provision of the AN Terms makes Meta's obligation to remit monthly payments expressly contingent on Meta's unilateral determinations. Specifically, Section 4(1) provides that, for Tag Integrations, Meta will pay the publisher "a percentage of Net Revenue … for the previous month *as solely determined by Meta*," and for Bidding Integrations, Meta will pay "the bid amount … for all Ads delivered … that were viewable (*as determined by Meta*)." (Ex. B, ¶ 4(1), emphasis added.) To the extent Meta's payment obligation is conditioned on its own determination of Net Revenue or whether an ad was "viewable," those determinations constitute conditions precedent to payment. Because the occurrence of these conditions depends entirely on Meta's discretion, Meta was required to exercise that discretion in good faith.

48.     Section 4(2) of the AN Terms further provides that "Meta will not be liable for any payment (a) based on such fraudulent activity or invalid activity, as determined by Meta in its discretion, or (b) in the event of any breach by Publisher of these Audience Network Terms (including the Audience Network Policy) during any applicable pay period." (Ex. B, ¶ 4(2).)

49.     While the Section 4(2) of the AN Terms grants Meta discretion to determine what constitutes "fraudulent activity or invalid activity," such discretion may not be exercised arbitrarily or in bad faith to frustrate the purpose of the contract.

- 9 -

50.    Meta breached the implied covenant of good faith and fair dealing by exercising its contractual discretion in bad faith. Specifically, Meta terminated DANA's account and offered no meaningful reasons for doing so, even though DANA endeavored at all times to comply with Meta's policies. Meta also refused to disclose the factual basis for its claim of policy violation, and denied DANA any meaningful opportunity to cure, appeal, or respond. DANA nevertheless submitted multiple appeals, but Meta summarily rejected them without substantive review or explanation.

51.    DANA's own review of its applications and advertising traffic showed that the traffic was organic, consistent with historical user activity, and not materially different from the periods in which Meta paid DANA in full. The sudden withholding of all accrued revenue despite this continuity further evidences arbitrariness.

52.    Meta's timing also reveals opportunism. Meta allowed revenue to accrue for months and then invoked "policy violations" only once the balance exceeded $395,000, thereby maximizing the amount withheld.

53.    Upon reviewing experiences publicly posted by other developers, DANA discovered that Meta's actions are consistent with a broader pattern whereby Meta withholds publisher earnings after large balances accrue, refuses to disclose the nature or scope of alleged violations, and thereby financially benefits at the publisher's expense.

54.    On information and belief, Meta also applies its Audience Network Policy inconsistently, paying some publishers under materially similar circumstances while denying payment to DANA. Such disparate treatment underscores Meta's bad faith.

55.    By withholding over $395,000 in accrued earnings without exercising its discretion in good faith, Meta deprived DANA of the core benefit of the agreement and frustrated the reasonable expectations of the parties.

SECOND AMENDED COMPLAINT

56.    Meta's actions constituted an abuse of contractual discretion, demonstrated bad faith and interfered with DANA's ability to benefit from the agreement.

57.    To the extent the AN Terms purport to grant Meta discretion, or even absolute discretion, to withhold payments under Section 4(2) of the AN Terms, that discretion is limited by the implied covenant of good faith and fair dealing. Meta claims that it did merely what the contract said it could do under its grant of that discretion; therefore, according to Meta, the implied covenant of good faith and fair dealing cannot apply because it would be at odds with the contract's express grant of discretionary power or absolute discretion. Here, however, the covenant of good faith and fair dealing must be implied with respect to Meta's discretion under Section 4(2) of the AN Terms, because reading the relevant provisions literally would render the agreement illusory and unenforceable. Without a good-faith limitation, Meta could unilaterally withhold all payments, leaving publishers with no consideration other than an illusory promise of compensation.

58.    As a direct and proximate result of Meta's breach of the implied covenant of good faith and fair dealing, DANA has suffered damages in the amount of at least $395,000, and additional amounts to be proven at trial.

59.    Meta's breaches were a substantial factor in causing harm to DANA.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.    Entry of judgment in favor of Plaintiff against Defendant on all claims for relief;

2.    For damages in the amount of at least $395,000;

3.    For interest to the extent allowed by law;

4.    For costs of suit to the extent allowed by law;

- 11 -
SECOND AMENDED COMPLAINT

5. For a judicial declaration that Section 4(2) of the Audience Network Terms and related provisions of the Audience Network Policy, as applied to withhold all accrued revenues, are unconscionable and unenforceable under California law;

6. For reasonable attorneys' fees to the extent allowed by law; and

7. For such other and further relief as the Court may deem just and proper.


DATED: November 18, 2025

Respectfully submitted,

/s/ Yongyuan Li
Yongyuan "Henry" Li (CA SBN #348954)
YK Law LLP
445 S Figueroa St, Ste 2280
Los Angeles, CA 90071
(213) 401-0970
hli@yklaw.us
*Attorney for Plaintiff*
DANA SOFT PTY LTD

- 12 -
SECOND AMENDED COMPLAINT